1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 10 JOSE MANUEL CORDOVA, an individual, | ) Case No.:  3:21-cv-00445-BEN-DEB |
| 11 | ) |
| Plaintiffs, | ) **ORDER:** |
| 12 | ) |
| v. | ) **(1)  GRANTING THE FONTANA** |
| 13 | )      **POLICE DEFENDANTS'** |
| IMPERIAL COUNTY NARCOTICS | )      **MOTION TO DISMISS** |
| 14 TASK FORCE, a California governmental | )      **PLAINTIFF'S COMPLAINT** |
| entity; COUNTY OF IMPERIAL, a | )      ***WITH PREJUDICE*** |
| 15 California governmental entity; MELANIE | ) |
| 16 MAGUE, individually and in her official | ) |
| capacity; ALBERT VALENZUELA, | ) **(2)  DENYING AS MOOT** |
| 17 individually and in his official capacity; | )      **DEFENDANTS' MOTION FOR** |
| IMPERIAL COUNTY DISTRICT | )      **LEAVE TO APPEAR** |
| 18 ATTORNEY, a California governmental | )      **TELEPHONICALLY AT** |
| 19 entity; GILBERT G. OTERO, individually | )      **HEARING** |
| and in his official capacity; IMPERIAL | ) |
| 20 COUNTY SHERIFF'S OFFICE, a | ) **[ECF Nos. 12, 14, 15, 16, and 17]** |
| 21 California governmental entity; | ) |
| RAYMOND LOERA, individually and in | ) |
| 22 his official capacity; FONTANA POLICE | ) |
| 23 DEPARTMENT, a California | ) |
| governmental entity; CHRISTOPHER | ) |
| 24 MACIAS, individually and in his official | ) |
| 25 capacity; CARL GUTHRIE, individually | ) |
| and in his official capacity; and DOES 1 | ) |
| 26 through 10, inclusive, | ) |
| 27 | ) |
| Defendants. | ) |

28

## I.   **INTRODUCTION**

Plaintiff Jose Manuel Cordova, an individual ("Plaintiff" or "Mr. Cordova") brings this civil rights action against Defendants Imperial County Narcotics Task Force, a California governmental entity (the "ICNTF"); the County of Imperial, a California governmental entity ("Imperial County"); Melanie Mague ("Ms. Mague"), individually and in her official capacity as a law enforcement officer working for the United States Department of Justice, Drug Enforcement Agency ("DEA")[1]; Albert Valenzuela ("Mr. Valenzuela"), individually and in his official capacity as a law enforcement officer; the Imperial County District Attorney, a California governmental entity (the "ICDA"); Gilbert G. Otero, individually and in his official capacity as the District Attorney; the Imperial County Sheriff's Office, a California governmental entity (the "ICSO"); Raymond Loera, individually and in his official capacity as Sheriff; the City of Fontana, erroneously sued as the Fontana Police Department, a California governmental entity (the "FPD"); Christopher Macias, individually and in his official capacity as a law enforcement officer for FPD ("Mr. Macias");  Carl Guthrie, individually and in his official capacity as a law

---

[1]     42 U.S.C. § 1983 ("Section 1983") provides a means to sue individuals acting under color of state law in their individual, but not official capacity. *See, e.g., Vance v. County of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996) (providing that "persons" under Section 1983 means only "state and local officials sued in their individual capacities, private individuals and entities which act under color of state law, and/or the local governmental entity itself").  Where a plaintiff pleads a separate claim against a county, allegations against individuals in their official capacity become duplicative. *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991).  Here, Plaintiff has already pled a separate claim against the County of Imperial, making the official capacity allegations against all individual defendants duplicative.  *See Cavanaugh v. Cty. of San Diego*, No. 3:18-CV-02557-BEN-LL, 2020 WL 6703592, at *25 (S.D. Cal. Nov. 12, 2020), *judgment entered,* No. 18-CV-02557-BEN-LL, 2020 WL 6702029 (S.D. Cal. Nov. 13, 2020) (dismissing all defendants to the extent they were sued in their official capacity, leaving only the allegations against them in their individual capacity where all individual defendants were sued in their individual and official capacity), *affirmed by* No. 20-56311, 2021 WL 6103115, at *1 (9th Cir. Dec. 22, 2021).  Such individuals are dismissed in their official capacity by the Court *with prejudice*.

enforcement officer for FPD ("Mr. Guthrie") (collectively, "Defendants"[2]); and Does 1 through 10[3], inclusive.  Complaint, ECF No. 1 ("Compl.") at 2-6, ¶¶ 3-14.

Before the Court are the Motions of Police Defendants (1) to Dismiss Plaintiff's Complaint for Failure to State a Claim, ECF No. 12 (the "Motion"), and (2) for Leave to Appear Telephonically or by Videoconference During the COVID-19 Public Emergency, ECF No. 15.  The Motions were submitted on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1) and Rule 78(b) of the Federal Rules of Civil Procedure ("FRCP"), thereby mooting Defendants' Motion for Leave to Telephonically Appear at the Hearing on the Motion.  ECF No. 17; *see also Tur v. YouTube, Inc.*, 562 F.3d 1212, 1214 (9th Cir. 2009) ("[A]n issue is moot when deciding it would have no effect within the confines of the case itself.").   After considering the papers submitted, supporting documentation, and applicable law, the Court (1) **GRANTS** Defendants' Motion to Dismiss the Amended Complaint without leave to amend and (2) **DENIES** Defendants' Motion for Leave to Telephonically Appear at the Hearing on the Motion.

## II. **BACKGROUND**

### A. **Statement of Facts**[4]

---

[2]    For ease of distinguishing which allegations are pled against which defendants throughout this order, the ICNTF, Imperial County, Ms. Mague, Mr. Valenzuela, the ICDA, Mr. Otero, the ICSO, and Mr. Loera shall be referred to as the "Investigative Defendants," while the FPD, Mr. Macias, and Mr. Guthrie shall be referred to as the Police Defendants.

[3]    Unlike California's code pleading standards, the Federal Rules of Civil Procedure do not permit doe defendants.  *Cavanaugh*, 2020 WL 6703592, at *25.  In the case of actions brought pursuant to Section 1983, like the present case, courts will permit doe defendants so long as the plaintiff makes specific allegations as to how each doe defendant violated the plaintiff's rights.  *See id.* (dismissing Does 1 through 50 after noting "*sua sponte*, that the SAC also includes allegations against Does 1 through 50," which is improper").  Here, there are no specific allegations against the individual doe defendants detailing how he or she contributed to a violation of Plaintiff's constitutional rights.  The doe defendants have also not been served.  Thus, they are dismissed *without prejudice*.

[4]    The majority of the facts set forth are taken from the operative complaint, and for

1    Plaintiff alleges that between September 20, 2013 and October 3, 2013, the
2  Investigative Defendants conducted a wiretap on the telephones of two individuals,
3  Raphael Martinez and Jonathan Vizcaino, pursuant to an order issued pursuant to Search
4  Warrant 2013-185 ("SW-2013-185") allowing them to wiretap for the purpose of listening
5  for drug-related activity.  Compl. at 7, ¶ 19; *see also* Defendants' Motion, ECF No. 12-1
6  ("Mot.") at 6 10-11.  During calls on September 20, 24, 26, 30, 2013 and October 1, 2, 3,
7  2013, the Investigative Defendants intercepted statements using the wiretap that led them
8  to believe that a kidnapping was going to take place in the City of Fontana.  *Id.* at 7, ¶ 20;
9  *see also* Mot. at 6:15-16.  Moving Parties state that Imperial County asked for the FPD's
10  help in preventing the kidnapping.  Mot. at 6:16-17.

11    On October 3, 2013, both the Investigative Defendants and Police Defendants,
12  relying on the intercepted communications obtained via the wiretap performed pursuant to
13  Search Warrant 2013-185, obtained a separate search warrant[5]; stopped Plaintiff and two

14  _____

15  purposes of ruling on Defendants' Motion, the Court assumes the truth of the allegations
16  pled and liberally construes all allegations in favor of the non-moving party.  *Manzarek v.
   St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

17    [5]    Plaintiff pleads that this search took place "relying on nothing more than the
18  intercepted communications obtained via wiretap," Compl. at 7, ¶ 21, while in their Motion
   to Dismiss, Police Defendants state that "the Imperial County Defendants and City
19  obtained a search warrant, stopped Plaintiff's vehicle, and searched Plaintiff and his
20  property," Mot. at 6:16-20 (citing Compl. at 7, ¶ 21).  Because the Court, when ruling on
   a motion to dismiss, must limit itself to the four corners of the complaint while assuming
21  the truth of the plaintiff's allegations, *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d
22  977, 980 (9th Cir. 2002); *Manzarek*, 519 F.3d at 1031, it would normally disregard
   Defendants' claim that they had a warrant for the search and seizure.  However, in
23  Plaintiff's Opposition brief, he argues that he "can allege additional facts establishing that
24  the [Police] Defendants had no other basis to stop the vehicle Mr. Cordova was in, that
   they should have reasonably known the warrant was invalid, and that they executed the
25  same in any event."  Oppo. at 5:14-17.  Because the Police Defendants were not alleged to
26  be involved in executing the wiretap, *see* Compl. at 7, ¶ 19, if the Police Defendants were
   "execut[ing] a warrant," it must have been a different warrant.  Thus, the Court construes
27  Plaintiff's argument as conceding that the search of Plaintiff's vehicle and hotel room and
28  subsequent arrest was performed after obtaining a search warrant.  *See, e.g.*, FED. R. CIV.

3:21-cv-00445-BEN-DEB

other men; searched their vehicles, property, and hotel rooms; and arrested them.  *Id.* at 7, ¶ 21; Mot. at 6:17-20.

Approximately one year and a half later, on April 14, 2015, a first amended information was filed in the Imperial County Superior Court, Count I of which alleged that Plaintiff conspired to commit the crime of kidnapping for ransom in violation of California Penal Code, §§ 182(a)(1), 209(a).  Compl. at 8, ¶ 26(a); *see also California v. Jose Manuel Cordova*, Imperial County Superior Court Case No. JCF31827 (the "Criminal Case").  This charge arose out of the wiretap investigation that included wiretap interception order SW-2013-185, issued on or about September 20, 2013.  *Id.*

On May 12, 2015, after using the wiretap communications as "the sole evidence" used to establish Plaintiff's alleged involvement with the kidnapping, a jury found Plaintiff guilty on Count I.  Compl. at 7, ¶ 22, 8, ¶ 26(b); *but see* CAL. PENAL CODE § 1054.1 (requiring a prosecuting attorney to disclose to a defendant or his counsel any exculpatory evidence in the prosecutor's possession, or that the prosecutor knows to be in the possession of any investigating agencies).  At the time of his conviction, Plaintiff alleges that he was unaware that the ICDA had failed to obtain an order from the court stating that the intercepted communications that went beyond the scope of the wiretap order could be admitted in Court, as is required by California Penal Code, § 629.50 et seq.[6]  *Id.* at 7, ¶ 25.

_____

P. 10(C) (explaining that "[a] statement in a pleading may be adopted by reference … in any other pleading or motion"); *see also Camara de Mercadeo, Industria y Distribucion de Alimentos, Inc. v. Emanuelli-Hernandez* (D.P.R. Nov. 30, 2021) (noting that courts may consider concessions in a plaintiff's opposition brief when determining "whether a complaint has stated a plausible, non-speculative claim for relief") (citing *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55-56 (1st Cir. 2012) (same).  The Court finds that the search of Defendant's vehicle and hotel room was performed pursuant to a warrant.

[6]     "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland,* 373 U.S. 83, 87 (1963).  Here, the failure to disclose the judicial authorization had been obtained, whether intentional or unintentional, does not qualify as a *Brady* violation because no

On June 17, 2016, Plaintiff was sentenced to 1,136 days in jail (which he had already served) and probation.  Compl. at 7, ¶ 23, 8, ¶ 26(c).

On or about June 17, 2019, Plaintiff's probation was terminated.  Compl. at 7, ¶ 24.

During post-trial proceedings in the case involving Plaintiff's co-defendant, Raphael Martinez (Case No. EHC000180), the government discovered that judicial authorization had not been obtained pursuant to California Penal Code, section 629.82(a) to allow use of evidence of crimes not specified in SW-2013-185.  *Id.* at 8, ¶ 26(d).  Penal Code sections 182(a)(1) and 209(a), the statutes under which Plaintiff was convicted, were not specified in wiretap interception order SW-2013-185.  *Id.*  On December 23, 2019, "Plaintiff filed a letter to the court in his criminal action … in which he references the outcome of the habeas corpus petition filed by his co-defendant Rafael Martinez wherein it was discovered that there were authorization issues with SW-2013-185."  Answer, ECF No. 11 ("Ans.") at 6, ¶ 27.

On or about June 3, 2020, based on a stipulation submitted to the Superior Court for the County of Imperial, the court entered a Stipulation and Order to Vacate Conviction as to Count 1 in Plaintiff's Criminal Case.  Compl. at 8, ¶ 26(e).  Defendants "admit that judicial authorization was not obtained pursuant to Penal Code section 629.82(a) to allow use of evidence of crimes not specified in SW-2013-185."  Ans. at 6, ¶ 25.  Plaintiff alleges he did not learn that the scope of the wiretap warrant had been exceeded until he was served with a copy of the June 3, 2020 Stipulation and Order.[7]  He further pleads that his "delay

---

evidence was suppressed, and the evidence used (*i.e.*, wiretap recordings of Plaintiff planning a kidnapping was not exculpatory and was, in fact, very inculpatory).  Rather, the procedure for using such inculpatory evidence was not followed.

[7]     Plaintiff alleges in his complaint that the Stipulation and Order invalidated the wiretap order.  Compl. at 9, ¶ 27.  The court "[m]ay take judicial notice on its own," or *sua sponte*, FED. R. EVID. 201(c)(1), including of district court records on the docket, *see*, *e.g.*, *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) (providing that "a court may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases").  The Court requested and obtained a copy of the Stipulation and Order from the Imperial County Superior Court and takes judicial notice of that order as a

in learning about the invalidity of the wiretap order and the use of the intercepted communications was reasonable as the matter required years of litigation to determine, with the District Attorney refusing to produce the wiretap orders and affidavits." Compl. at ¶ 28.

At this time the Court vacated his conviction, Plaintiff had already served his time in jail, and his probation had terminated. Thus, the Court's decision vacating the conviction only had the effect of removing the conviction from his record.

## B.   **Procedural History**

On March 12, 2021, Plaintiff filed this lawsuit against Defendants, alleging a single cause of action for violation of his civil rights pursuant to 42 U.S.C. § 1983 against all Defendants. *See* Compl. at 9-10.

By March 18, 2021, Plaintiff had served the ICDA, Imperial County, the FPD, the ICSO, and ICNTF. ECF Nos. 3, 6, 7, 8, 9, 10. However, to date, no proof of service has been filed for Ms. Mague, Mr. Valenzuela, Mr. Otero, Mr. Loera, Mr. Macias, and Mr. Guthrie.[8]

On April 7, 2021, Defendants Imperial County, ICDA, ICSO, Mr. Otero, and Mr.

---

public record. That order in no way invalidated any search warrants involved in this case. Rather, after Plaintiff had been released from incarceration, the parties agreed to vacate his conviction, and the judge presiding over the case vacated the judgment for the conviction, pursuant to the parties' stipulation. *See* Stipulation and Order to Vacate Conviction, *People v. Jose Cordova*, Imperial County Superior Court Case No. JCF31827 (Jun. 3, 2020).

[8]   Nonetheless, on May 11, 2021, a Notice of Appearance was filed on behalf of the FPD, Mr. Macias, and Mr. Guthrie. ECF No. 13. On June 9, 2021, a Notice of Appearance was also filed on behalf of Mr. Otero and Mr. Loera. *See* ECF Nos. 18 and 20. Thus, Ms. Mague and Mr. Valenzuela remain unserved and have not yet appeared. *But see* FED. R. CIV. P. 4(m) (providing that "[i]f a defendant is not served within 90 days after the complaint is filed," or in this case, by June 10, 2021, "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time"); *see also* S.D. Cal. Civ. R. 41.1(a) (providing that "[a]ctions or proceedings which have been pending for more than six months, without any proceeding or discovery having been taken therein during such period, may, after notice, be dismissed by the court for want of prosecution").

1    Loera filed an Answer to Plaintiff's Complaint.  ECF No. 11.  That same day, Police

2    Defendants filed the instant Motion.  *See* Motion, ECF No. 12-1 ("Mot.").  On May 24,

3    2021, Plaintiff opposed.  Opposition, ECF No. 14 ("Oppo.").  On May 28, 2021, Moving

4    Parties replied.  Reply, ECF No. 16 ("Reply").

5    ### III.  <u>LEGAL STANDARD</u>

6           Under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"), a

7    complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts

8    which, if true, would entitle the complainant to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S.

9    544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be

10   facially plausible to survive a motion to dismiss).  The pleadings must raise the right to

11   relief beyond the speculative level; a plaintiff must provide "more than labels and

12   conclusions, and a formulaic recitation of the elements of a cause of action will not do."

13   *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  On a

14   motion to dismiss, a court accepts as true a plaintiff's well-pleaded factual allegations and

15   construes all factual inferences in the light most favorable to the plaintiff.  *See Manzarek*

16   *v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  A court is not

17   required to accept as true legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S.

18   at 678.

19          "Generally, unless the court converts the Rule 12(b)(6) motion into a summary

20   judgment motion, it cannot consider material outside the complaint (e.g., facts presented

21   in briefs, affidavits or discovery materials)."  Phillips & Stevenson, *California Practice*

22   *Guide: Federal Civil Procedure Before Trial* § 9:211 (The Rutter Group April 2020).

23   Thus, in evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of

24   the complaint and material properly submitted with it.  *Van Buskirk v. Cable News*

25   *Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner*

26   *& Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  Under the incorporation by

27   reference doctrine, the court may also consider documents "whose contents are alleged in

28   a complaint and whose authenticity no party questions, but which are not physically

attached to the pleading" without converting a motion to dismiss to a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002). The court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "Plaintiffs may plead themselves out of court by attaching exhibits inconsistent with their claims because the court may disregard contradictory allegations." Phillips, § 9:212a; *Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007–08 (9th Cir. 2015) (noting that courts "need not accept as true allegations contradicting documents that are referenced in the complaint"). Courts may also consider any statements made in a pleading or motion, including concessions made in plaintiff's response to the motion to dismiss as well as in response to any other pleading or motion. FED. R. CIV. P. 10(C).

When a motion to dismiss is granted, the court must decide whether to grant leave to amend. The Ninth Circuit has a liberal policy favoring amendments, and thus, leave to amend should be freely granted. *DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a court need not grant leave to amend when permitting a plaintiff to amend would be an exercise in futility. *See, e.g.*, *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

## IV.   DISCUSSION

Police Defendants move to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) by arguing that Plaintiff's claim is barred by the statute of limitations, and even if the claim was not barred, Plaintiff fails to plead sufficient facts to state a claim. Mot. at 6:27-7:2. They also argue that Plaintiff has failed to plead sufficient facts to establish liability against the City of Fontana under *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978). *Id.* at 7:2-3. This Court agrees that the statute of limitations has run on Plaintiff's claims.

Alternatively, Plaintiff has not made out a plausible claim for relief.  Plaintiff has pled the bare elements of a claim for relief under Section 1983.  The problem lies in the fact that since the Supreme Court's decision in *Twombly* in 2007, a plaintiff must provide "more than . . . a formulaic recitation of the elements of a cause of action."  550 U.S. at 555.  Here, Plaintiff's Complaint fails because his own inconsistent and unclear allegations make the constitutional violations he alleges implausible.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir.), *opinion amended on denial of reh'g,* 275 F.3d 1187 (9th Cir. 2001) ("We have held that a plaintiff can—as Sprewell has done here—plead himself out of a claim by including unnecessary details contrary to his claims."); *see also Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295–96 (9th Cir. 1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint.").

In sum, this Court **GRANTS** Police Defendants' Motion to dismiss the complaint because, as analyzed below, as pled, Plaintiffs' claims fail as a matter of law.  Because the facts of this case indicate that Plaintiffs' legal theories fail as matter of law and cannot be cured by amendment, the Court also denies leave to amend.

## A.   <u>Plaintiff's Claims Are Untimely</u>

"A claim may be dismissed as untimely under Rule 12(b)(6) if the running of the statute of limitations is apparent on the face of the complaint."  *Bryan v. City of Carlsbad*, 297 F. Supp. 3d 1107, 1121 (S.D. Cal. 2018) (citing *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010)).  With respect to lawsuits filed pursuant to Section 1983, federal courts look to state law to determine the applicable statute of limitations but federal law to examine accrual.  *Wallace v. Kato*, 549 U.S. 384, 387-88 (2007).  In California, personal injury actions must be filed within two years from the date of injury.[9]  CAL. CODE CIV. P. §§ 335.1; *see also* Oppo. at 4:23-25 (agreeing that

---

[9]   As discussed below, Plaintiff alleges violations of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.* (the "OCCSSA") and Preseley-Felando-Eaves Wiretap Act of 1988, CAL. PENAL CODE §§ 629.50 *et seq.* (the "PFEWA").  Compl.

the statute of limitations under section 335.1 is two years); *Mills v. City of Covina*, 921 F.3d 1161, 1166 (9th Cir.), *cert. denied sub nom. Mills v. City of Covina, California*, 140 S. Ct. 388 (2019) (applying California's two year statute of limitations to the plaintiff's Section 1983 claims for, *inter alia*, an unlawful stop and detention).  "Accrual is the date on which the statute of limitations begins to run; under federal law, a claim accrues 'when the plaintiff knows or has reason to know of the injury which is the basis of the action.'"  *Lukovsky v. City & Cty. of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008).

In a traditional Fourth Amendment case, such as this one, the claim begins accruing at the time of the search and seizure.  *Belanus v. Clark*, 796 F.3d 1021, 1025-27 (9th Cir. 2015); *Mills*, 921 F.3d at 1166 ("Mills had complete and present causes of action for all but his malicious prosecution and *Monell* liability claims when he was subjected to a search in violation of the Fourth Amendment and was arrested; therefore, those claims accrued at that time.").  Meanwhile, "§ 1983 claims relating to pending charges do not accrue until the charges are dismissed if a judgment in favor of the plaintiff would necessarily imply the invalidity of any sentence that might result from prosecution of pending charges."  *Womack v. Cty. of Amador*, 551 F. Supp. 2d 1017, 1025 (E.D. Cal.

---

at 9, ¶ 30.  The OCCSSA requires a civil action for violation of its provisions to be commenced within "two years after the date upon which the claimant first has a reasonable opportunity to discover the violation," 18 U.S.C. § 2520(e), but there were no federal actors alleged to have been involved and the PFEWA is more restrictive than the OCCSSA.  The PFEWA, on the other hand, does not set out a specific statute of limitations.  Cal. Penal Code § 629.84; *see also Guerrero v. Hestrin*, 56 Cal. App. 5th 172, 192, n.11 (2020) (noting that "[a]lthough [it was] not aware of any case discussing the statute of limitations for a section 629.86 action and [did] not rule on the issue, … (1) the statute does not state a limitations period, (2) the general 'catch-all' limitations period is four years where the Code of Civil Procedure does not provide otherwise (Code Civ. Proc., § 343), and (3) if the catchall provision governs, then the limitations period may have already run for many of those whose calls were intercepted at least five years ago").  Here, even if the Court construed Plaintiff's claim as a claim for violations of section 629.86 of the California Penal Code, rather than a Section 1983 tort claim, applying California's "catchall" statute of limitations of four years but using the date the calls were intercepted (*i.e.*, sometime in September or October 2013), Plaintiff's claims would still be time barred.  *See id.*

2008) (citing *Harvey v. Waldron,* 210 F.3d 1008, 1014-16 (9th Cir.2000) ("hold[ing] that a § 1983 action alleging illegal search and seizure of evidence upon which criminal charges are based does not accrue until the criminal charges have been dismissed or the conviction has been overturned.")).

State law governs the application of tolling doctrines. California Government Code section 945.3 provides that the statute of limitations is tolled while criminal charges are pending. CAL. GOV'T CODE § 945.3 ("No person charged ... [with] a criminal offense may bring a civil action ... against a peace officer or the public entity employing a peace officer based upon conduct of the peace officer relating to the offense ... while the charges against the accused are pending before a superior court."). The purpose behind the tolling provision is to prohibit plaintiffs from using civil complaints as "bargaining chip[s] in plea negotiations" or "discovery tools to probe the prosecution's case." *McAdams v. El Dorado Cty.*, No. 2:20cv1290-KJM-KJN, 2021 WL 6052277, at *2 (E.D. Cal. Dec. 21, 2021) (citing *Schmidlin v. City of Palo Alto*, 157 Cal. App. 4th 728, 758 (2007)). Tolling ends when the criminal charges are disposed. *Id.* In Plaintiff's case, the criminal charges were disposed on May 12, 2015, which is the day a jury found Plaintiff guilty of kidnapping. Thus, the statute of limitations began running again in May 2015, and ran out two years later in May 2017. Consequently, this action was filed four years too late.

Plaintiff disagrees arguing that his "[S]ection 1983 action's statute of limitations was subject to the *Heck* bar[ ] and did not accrue until the invalidation of his conviction on June 3, 2020." Oppo. at 2:10, 3:11-13. In 1994, in *Heck v. Humphrey*, the Supreme Court established what is known as the "*Heck* bar," which prevents a person from filing a Section 1983 action to challenge a criminal conviction before the conviction is reversed, expunged, declared invalid, or called into question in some fashion, resulting in a plaintiff being "barred" from filing suit before that occurs. 512 U.S. 477, 478-80 (1994). Plaintiff contends that under *Heck*, he had until June 3, 2022 to file this case, and by filing on March 12, 2021, he filed suit "a mere 9 months after his conviction was invalidated" and well within the statute of limitations. *Id.* at 4:26-28.

a.     *History of the Heck Bar*

*Heck* involved a challenge by a prisoner to the constitutionality of his conviction via a suit for damages under Section 1983. 512 U.S. at 478. Roy Heck had been convicted of voluntary manslaughter for the killing of his wife and was serving a fifteen-year sentence. *Id.* While the appeal of his conviction was pending in state court, he filed his Section 1983 action in the district court against various defendants, including prosecutors and state police employees, alleging they unlawfully and knowingly destroyed exculpatory evidence. *Id.* at 478-79. Both the district court and Seventh Circuit, however, dismissed the Section 1983 complaint because the complaint "directly implicate[d] the legality of [the] petitioner's confinement," which was still on appeal. *Id.* at 479.

The Supreme Court affirmed both lower courts, holding that "[j]ust as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Id.* at 489-90 (internal citations omitted). Consequently, "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487. "[I]f it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487. However, "if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.*

Here, Plaintiff does not plead his case as one for an unlawful conviction or sentence; rather, he frames the case as one for violation of the Fourth Amendment. *See* Compl. at 7, ¶ 25, 9, ¶ 30; *see also* Oppo. at 4:1-6 ("Mr. Cordova is not making such a section 1983 [false arrest] claim but is making a section 1983 claim based solely unlawful search and seizure.") (citing Compl. at 4, ¶ 30). The difference is important.

Plaintiff argues that in *Harvey v. Waldron*, 210 F.3d 1008, 1015-16 (9th Cir. 2000), the Ninth Circuit held that the *Heck* bar extends to Section 1983 claims alleging damages attributable to an alleged illegal search and seizure under the Fourth Amendment.  Oppo. at 3:1-3.  However, *Harvey's* reasoning was overruled seven years later by the Supreme Court in *Wallace v. Kato*, when the Court explained that applying the *Heck* bar to permit a Fourth Amendment attack later, after the statute of limitations had run, would be "a bizarre extension of *Heck*." 549 U.S. at 393-94.  Instead, as described more fully below, *Wallace* suggested that a § 1983 plaintiff timely file his claim, and then, a court could stay the civil case until the criminal proceedings had reached a conclusion:

> If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended.  If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit.

*Id.* at 393-94 (citations omitted).

b.  <u>*Heck Bar false arrest claims accrue when the defendant is bound over for trial*</u>

Although Plaintiff disavows basing his Section 1983 on an alleged false arrest claim, *see* Oppo. at 4:1-6, because the Court dismisses this case *with prejudice*, it analyzes whether Plaintiff's claims could be plausibly be construed as a false arrest claim to save it from the statute of limitations.

In *Wallace*, the Supreme Court held that the *Heck* bar does not extend to Fourth Amendment claims filed before a conviction has occurred, overruling in part, some of the holdings in *Harvey*.  549 U.S. at 386.  The *Wallace* plaintiff filed suit under Section 1983, seeking damages for an arrest that violated his Fourth Amendment rights.  549 U.S. at 386.  The defendant, Andre Wallace, had been taken to a police station one evening in January 1994, for questioning two days after an individual was shot to death in Chicago, Illinois.

*Id.* After interrogations lasting into the early morning, the defendant agreed to confess to the murder and signed a statement and *Miranda* waiver. *Id.* Before trial, the defendant unsuccessfully attempted to suppress his station house confession as the product of an unlawful arrest. *Id.* The defendant was convicted of first-degree murder and sentenced to 26 years in prison. *Id.* In 1998 and 2001, the Appellate Court of Illinois, however, remanded the case for a new trial after concluding that (1) even assuming the defendant willingly accompanied the police to the station, his presence escalated into an involuntary seizure prior to his formal arrest, and (2) the effect of his arrest had not been sufficiently attenuated to render his statements admissible. *Id.* at 386-87. Eventually, on April 10, 2002, the prosecution dropped the charges against the defendant. *Id.* at 387. On April 2, 2003, the defendant filed a lawsuit against the City of Chicago and several police officers, seeking damage for his unlawful arrest. *Id.* at 387. The district court granted summary judgment, which the Seventh Circuit Court of Appeals affirmed, on the basis that the Section 1983 suit was time barred because his cause of action accrued at the time of his arrest rather than when his convictions was later set aside. *Id.* at 387.

The Supreme Court affirmed, holding that "the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Id.* at 397. More specifically, the Court concluded that the claim commences when the defendant appears "before the examining magistrate and [is] bound over for trial." *Id.* at 391-92. Because in *Wallace*, "this occurred (with appropriate tolling for the plaintiff's minority) more than two years before the complaint was filed, the suit was out of time." *Id.* at 397. The Court reasoned that no justification for deferred accrual or tolling existed because the plaintiff could file suit after his arrest, and the district court could stay a Section 1983 case until the criminal case ends to afford adequate protection to the plaintiff's rights. *Id.* at 394. It also expressly rejected any argument that failing to equitably toll the statute of limitations would require the defendant "to divide his attention between criminal and civil cases," asking "when has it been the law

-15-

that a criminal defendant, or a potential criminal defendant, is absolved from all other responsibilities that the law would otherwise place upon him?" *Id.* at 396.  In sum, *Wallace* considered and expressly declined to adopt a tolling rule while the defendant is incarcerated.  *Id.*

Plaintiff argues that *Wallace* is distinguishable because it arose out of a claim for false imprisonment, which Plaintiff contends "is subject to a distinctive rule" and accrues when the plaintiff appears before the examining magistrate and is bound over for trial. Oppo. at 3:17-21.  Plaintiff contends that instead, like the *Heck* plaintiff, the product of the illegal search and seizure (*i.e.*, the wiretap used to convict him) "was 'an essential element' of the crimes for which [he] was charged and would necessarily imply the invalidity of [his] criminal conviction."  *Id.* at 3:7-8.  However, the Court finds this argument unpersuasive given the communications regarding the nontargeted offenses were obtained by performing a lawful—as opposed to illegal—search (*i.e.*, the wiretap).

c. *Falsified or fabricated evidence claims begin to run on the date of acquittal*

More recently, in *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 914-15 (2017), the Supreme Court expanded on *Wallace*, holding that a defendant "may [immediately] challenge his pretrial detention on the ground that it violated the Fourth Amendment. Unlike a Fourth Amendment claim, the statute of limitations period in a Section 1983 case premised on fabricated evidence does not begin to run until the defendant's acquittal. *McDonough v. Smith*, 139 S. Ct. 2149, 2153 (2019).  Both *Manuel* and *McDonough* involve claims of fabricated evidence leading to a Section 1983 claim for unlawful confinement.  139 S. Ct. at 2153; 903 F.2d at 670.  This case involves neither fabricated evidence nor a claim for unlawful confinement.

d. *Heck Bar does not apply to excessive force cases*

In *Smith v. City of Hemet*, 394 F.3d 689, 693 (9th Cir. 2005) (*en banc*), the Ninth Circuit held that the plaintiff, who had been convicted of resisting arrest, could bring a Section 1983 claim without it being "barred by *Heck* because the excessive force may have

-16-

been employed against him subsequent to the time he engaged in the conduct that constituted the basis for his conviction." In such a case, even if he succeeded on the Section 1983 claim, it would not necessarily invalidate his conviction. *Id.* Similarly, in this case, the alleged unlawful acts—whether those are the use of the nontargeted offense communications at trial or the search of his person based on overhearing the nontargeted offense communications—took place *after* Plaintiff began conspiring to kidnap someone, so even if he succeeded on his Section 1983 claim, it would not necessarily invalidate his conviction. Thus, even though this case does not involve excessive force, applying the excessive force cases to Plaintiff's claims suggest the *Heck Bar* would not bar them.

In sum, the statute of limitations for a § 1983 claim based on the Fourth Amendment is not extended by virtue of the *Heck* bar. Based on the face of the Complaint, Plaintiff's claim accrued in 2013 when the search and seizure took place. The statute of limitations was then tolled by California Government Code § 945.3 until the criminal proceedings came to an end on May 12, 2015 when the jury found Plaintiff guilty of the kidnapping charges. However, the statute of limitations ran out two years later in May 2017, well before Plaintiff filed suit in this case. Thus, the § 1983 claim for violations of the Fourth Amendment is barred by the statute of limitations. Alternatively, Plaintiff fails to state a claim for relief.

## B. Plaintiff Has Failed to Plead Sufficient Facts to State a Section 1983 Claim

"Every person who, under color of any statute … of any State … subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. Thus, to state a claim under Section 1983, a plaintiff must allege (1) the violation of a right secured by the Constitution and laws of the United States and (2) that the alleged deprivation was committed by a person acting under color of state law. *Id.*; *see also West v. Atkins*, 487 U.S. 42, 48 (1988); *Belgau v. Inslee*, 975 F.3d 940 (9th Cir. 2020). "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"

-17-

1    *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

2        Plaintiff's Complaint alleges a violation of the Fourth Amendment of the United

3    States Constitution; the OCCSSA; and the PFEWA.  Compl. at 9, ¶ 30.  Although the Court

4    finds Plaintiff has adequately pled action taken under color of state law, Plaintiff's claims

5    are not plausible.  The alleged actions in this case do not amount to a violation of Plaintiff's

6    Fourth Amendment rights, meaning he cannot state sufficient facts to plead the second

7    element of a Section 1983 claim: deprivation of a constitutional right.

8                  ### 1.   *State Action*

9        Action under color of state law is a jurisdictional prerequisite to a Section 1983

10   action because the Eleventh Amendment prohibits United States citizens from suing states.

11   U.S. CONST., AMENDMENT XI; *West*, 487 U.S. at 46.  As such, "[n]either a state nor state

12   officials acting in their official capacities are 'persons' amenable to suit for damages under

13   42 U.S.C. § 1983."  *Munoz v. Kolender*, 208 F. Supp. 2d 1125, 1150-51 (S.D. Cal. 2002).

14   "The traditional definition of acting under color of state law requires that the defendant in

15   a § 1983 action have exercised power possessed by virtue of state law and made possible

16   only because the wrongdoer is clothed with the authority of state law."  *West*, 487 U.S. at

17   49.  Essentially, the acts of the defendant in a Section 1983 action that are at issue must

18   have been done while abusing power given to the defendant by the State.  *Id.*

19       As to the second prong, Plaintiff alleges Defendants acted under color of state law.

20   *See, e.g.*, Compl. at 3-6, ¶¶ 4-14 (alleging that each defendant "acted under color of" his,

21   her, or its "authority as such, and under color of the states, regulations, customs, and usages

22   of the . . . State of California").  As such, Plaintiff has alleged state action.  That being said,

23   Plaintiff also alleges a violation of the OCCSSA.  However, "[b]ecause the Defendants are

24   local rather than federal officials and municipalities, and because the two wiretapping

25   statutes regulate the same sphere of conduct, the operative directive in our case is the

26   California Wiretapping Statute and not the Federal Wiretapping Statute, unless of course,

27   the federal statute preempts that of the state."  *Whitaker v. Garcetti*, 291 F. Supp. 2d 1132,

28   1141-42 (C.D. Cal. 2003), *aff'd in part, vacated in part on other grounds, rev'd in part on*

*other grounds,* 486 F.3d 572 (9th Cir. 2007) (citing *Pac. Gas & Elec. Co. v. State Energy Res. Conserv. and Dev. Comm'n*, 461 U.S. 190, 212-213 (1983); *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-143 (1963)) (noting that because "California's statute imposes more restrictive rules than its federal equivalent," it is not preempted). "Because of the absence of preemption and because Defendants are local officials who obtained the wiretap order from a local Superior Court Judge, Defendants were only bound by California's Wiretapping Statute." *Id.* at 1142.

In sum, even though Plaintiff's complaint raises violations of the OCCSSA, *see* Compl. at 9, ¶ 30, Plaintiff is "therefore barred from recovering under § 1983 for an underlying violation of federal statutory law." *Whitaker*, 291 F. Supp. 2d at 1141-42 (holding that the where the plaintiffs' theory was that the defendants' failure to adhere to the Federal Wiretapping Statute rendered them liable to the plaintiffs under Section 1983, the claim was misguided as the wiretapping activities in the case were governed by the California statue, not the federal equivalent). "Thus, in order to succeed under § 1983, Plaintiff must establish an underlying constitutional violation." *Id.* at 1142. However, as outlined below, the Court finds Plaintiff cannot establish one as a matter of law.

### 2. *Deprivation of a Constitutional Right*

The next "step in any such [1983] claim is to identify the specific constitutional right allegedly infringed." *Albright*, 510 U.S. at 271. As applied to the present case, in order to prevail on his unlawful search and seizure claim arising under 42 U.S.C. § 1983, Plaintiff must establish that Defendants, deprived him of his Fourth Amendment right to be free from unreasonable searches and seizures, while acting under color of state law. *See Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 60-63, n.6 (1992).

Plaintiff appears to allege both an unlawful search and seizure. *See* Compl. at 9, ¶ 30. "A search occurs for Fourth Amendment purposes when the government physically intrudes upon one of these enumerated areas, or invades a protected privacy interest, for the purpose of obtaining information." *Patel v. City of Los Angeles*, 738 F.3d 1058, 1061 (9th Cir. 2013), *aff'd sub nom. City of Los Angeles, Calif. v. Patel*, 576 U.S. 409 (2015)

(citing *United States v. Jones*, 565 U.S. 400, 407 (2012); *Katz v. United States*, 389 U.S. 347, 360–61 (1967) (Harlan, J., concurring)). A seizure of the person "occurs when a law enforcement officer, through coercion, physical force[,] or a show of authority, in some way… communicated to a reasonable person that he was not at liberty to ignore the police presence to go about his business." *Hopkins v. Bonvicino*, 573 F.3d 752, 773 (9th Cir. 2009) (internal citations and quotation marks omitted). An arrest is the "the 'quintessential "seizure of the person" under … Fourth Amendment jurisprudence.'" *Torres v. Madrid*, 141 S. Ct. 989, 995 (2021) (quoting *California v. Hodari D.*, 499 U.S. 621, 624 (1991)). "A seizure," or arrest, "conducted pursuant to a warrant obtained by judicial deception violates the Fourth Amendment." *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007). Here, a search of Plaintiff's hotel room and vehicle took place while an arrest, or seizure of his person, also took place. If Plaintiff's arrest resulted from a warrant obtained by judicial deception, a Fourth Amendment violation would arise.

Police Defendants argue that Plaintiff's Complaint fails to plead sufficient facts "to show that the City violated Plaintiff's Fourth Amendment Rights" because it "fails to allege any facts to indicate that the City was involved in obtaining the wiretap warrant, participating in listening in on the phone calls, or knew or had reasons to know that the wiretap warrant had been exceeded." Mot. at 13:21-14:2. Rather, the City and FPD acted on information obtained from the Investigatory Defendants and had no knowledge that the scope of the wiretap had been exceeded. *Id.* Police Defendants point out "according to Plaintiff's Complaint, Defendants Macias and Guthrie were not involved in obtaining or conducting the wiretaps, but instead were involved only in arresting Plaintiff and searching his vehicle and hotel room." Reply at 4:23-5:2 (citing Compl. at ¶¶ 20-22). Indeed, while the Complaint alleges that the Investigative Defendants were involved in intercepting the calls, Compl. at 7, ¶ 20, it alleges that all Defendants (*i.e.*, the Investigative Defendants plus the Police Defendants) stopped Plaintiff and two other men, searched their vehicles and hotel rooms, and arrested them, *id.* at 7, ¶ 21. Thus, to the extent Plaintiff's Fourth Amendment rights were violated "because the warrants used to search and seize him were

based on allegedly illegally obtained information," Mot. at 13:22-25 (citing Compl. at 7-9, ¶¶ 19-21, 25-26, 30), Plaintiff has not pled sufficient facts to show that the Police Defendants or City had anything to do with the behavior that allegedly violated his constitutional rights.   Moreover, Police Defendants state that the "Complaint unambiguously states that Plaintiff's conviction was based solely on the wiretap intercepts and not on evidence obtained as a result of the allegedly unconstitutional search and seizure conducted by Defendants Macias and Guthrie." Reply at 2:10-13 (citing Compl. at ¶ 22). Thus, if Plaintiff pleads the conviction was based on the wiretap evidence but simultaneously pleads that Police Defendants were not involved in the wiretap intercepts, it is implausible that they would be involved in any constitutional wrongs alleged in the complaint. Reply at 2:13-16. As set forth below, the Court agrees.

Plaintiff conclusorily argues that his "allegations certainly are sufficient to allege that (1) a federal right has been violated and (2) the right was clearly established at the time of the violation." Oppo. at 5:11-14 (citing *Horton by Horton City of Santa Maria*, 915 F.3d 592, 599 (9th Cir. 2019)). First, Plaintiff cites to Paragraph 21 of the Complaint to say his allegations are sufficient. Oppo. at 5:5-10 (citing Compl. at ¶ 21). However, Police Defendants aptly reply that "the only facts alleged in Plaintiff's Complaint are that Defendants Macias and Guthrie searched Plaintiff's vehicle and hotel room and arrested him." *Id.* at 6:17-19 (citing Compl. at ¶ 21). Second, Plaintiff states that if the Court finds his allegations are insufficient, he "can allege additional facts establishing that the [Police] Defendants had no other basis to stop the vehicle [he] was in, that they should have reasonably known the warrant was invalid, and that they executed the same in any event." *Id.* at 5:14-17. Police Defendants reply that "Plaintiff essentially concedes that his Complaint fails to satisfy the *Iqbal/Twombly* pleading standard." Reply at 6:13-14. They point out that even though Plaintiff alleges "that the basis of the search and seizure was information gleaned from the wiretap, he fails to allege any plausible facts showing that Defendants Macias and Guthrie were involved in the wiretap or had any reason to believe that the wiretap was conducted in an illegal manner." *Id.* at 6:20-23. Instead, "the face of

Plaintiff's Complaint fails to state any plausible facts showing that Defendants Macias and Guthrie had no reason to believe they were acting pursuant to exigent circumstances—i.e., preventing an imminent kidnapping—when they conducted the search and seizure." *Id.* at 6:23-7:2 (citing *Mincey v. Arizona*, 437 U.S. 385, 394 (1978) (noting that an exception applies to the Fourth Amendment when "the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment.")).

As outlined below, Plaintiff does not clearly allege what specific acts violated his constitutional rights beyond conclusorily alleging an unlawful search and seizure. Police Defendants argue that Plaintiff's basis for his Section 1983 claim is that the October 3, 2013 search and seizure was based entirely on information obtained during an earlier wiretap of his phone, where Defendants exceeded the scope of the wiretap warrant. Mot. at 12:3-6. The Court finds Plaintiff's complaint, which admittedly fails to articulate his claims well, indicates a different basis for his Section 1983 claim: Plaintiff alleges that "Defendants, and each of them, deprived [him] of his rights against unlawful searches and seizures and against the deprivation of life, liberty, and property as required by the Fourth Amendment of the United States Constitution, 18 U.S.C. § 2510 et seq., and California Penal Code, § 629.50 et seq." Compl. at 9, ¶ 28. He elaborates that "[u]nknown to [him], not only was the wiretap order invalid, but the district attorney's office had failed to obtain an order from the court that the intercepted communications beyond the scope of the wiretap order—namely, drug related—were admissible in Court as required by the Fourth Amendment of the United States Constitution, 18 U.S.C. § 2510 et seq., and California Penal Code, § 629.50 et seq." *Id.* at 7, ¶ 25.

The problem in this case is that Plaintiff's "assertions that the [wiretap] violated [his] rights or was unreasonable or illegal are almost entirely conclusory." *Bryan v. City of Carlsbad*, 297 F. Supp. 3d 1107, 1120 (S.D. Cal. 2018) (Burns, J.) (granting a motion a motion to dismiss a Section 1983 claim for an unlawful search and *Monell* claim while noting that "[a] few factual details [alleging how the search violated her rights or was

-22-

unreasonable] *might* support a Fourth Amendment claim … in some other context," such as where the officers did not have a warrant).  Based on the applicable law, despite Plaintiff pleading the wiretap order was invalid, he provides no factual allegations to support this, and his other allegations—namely that Investigative Defendants conducted the wiretap pursuant to SW-2013-185, which allowed them to intercept communications—make it implausible that the wiretap order itself was invalid.  Compl. at 7, ¶ 19.  Thus, the only remaining plausible alleged wrong is that the district attorney's office did not obtain a court order allowing them to use communications related to nontargeted offenses in Court against Plaintiff at his trial.  *See id.* at 7, ¶ 25.  However, even though Defendants admit they failed to get judicial authorization to use the nontargeted offenses, *see* Answer at 6, ¶ 25, it has no impact on his criminal case, which has already been vacated.  Either way, the Court analyzes the only three potential unlawful acts—the interception of the communications, the search based on the nontargeted offenses, and the use of the statements regarding the nontargeted offenses—below.  However, it finds that Plaintiff's allegations, even liberally construing his Complaint to examine every feasible Fourth Amendment violation, do not state a claim for violation of the Fourth Amendment.

a.   *Even if Plaintiff alleges an unlawful search via intercepting statements regarding nontargeted offenses, such allegations do not state a Fourth Amendment violation.*

For a search to comply with the Fourth Amendment, government officials must either obtain consent, possess a warrant, or demonstrate exigent circumstances before executing the search.  *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990).  The probable cause requirement of the Fourth Amendment requires the state to show probable cause to believe that a "specific crime has been or is being committed" before invading constitutionally protected areas.  *See Berger v. New York*, 388 U.S. 41, 59 (1967).  However, the elements a search warrant must specify only directly relate to the suspected offense:

> The Fourth Amendment requires specification of "the place to be searched, and the persons or things to be seized."  In the wiretap context, those requirements are satisfied by identification of the telephone line to be tapped and the particular conversations to be

seized.  It is not a constitutional requirement that all those likely to be overheard engaging in incriminating conversations be named.  Specification of this sort "identif(ies) the person whose constitutionally protected area is to be invaded rather than 'particularly describing' the communications, conversations, or discussions to be seized."

*United States v. Donovan*, 429 U.S. 413, 427 n.15 (1977) (citing *Berger*, 388 U.S. at 59).

Where the police conduct a search with a warrant or demonstrate exigent circumstances, "and the officer has a lawful right of access … no additional Fourth Amendment interest is furthered by requiring that the discovery of evidence be inadvertent."  *Horton v. California*, 496 U.S. 128, 140, 142 (1990).  For example, in *Horton*, the Supreme Court affirmed the California Supreme Court's decision upholding a defendant's armed robbery conviction, rejecting his efforts to suppress the evidence against him.  *Id.*  The *Horton* affidavit for a search warrant referred to police reports describing weapons as well as the proceeds of a robbery.  *Id.* at 130-31.  However, the warrant issued by the magistrate only authorized a search for the robbery proceeds.  *Id.* at 131.  The police testified that while they executed the search of the defendant's home pursuant to the warrant, they did not find the proceeds of the robbery but did see the weapons in plain view and seized them.  *Id.*  Although the defendant argued the weapons had been unlawfully seized in violation of his Fourth Amendment rights, the Supreme Court held that "the items seized from petitioner's home were discovered during a lawful search authorized by a valid warrant."  *Id.* at 142.  "When they were discovered, it was immediately apparent to the officer that they constituted incriminating evidence."  *Id.*  "He had probable cause, not only to obtain a warrant to search for the stolen property, but also to believe that the weapons and handguns had been used in the crime he was investigating."  *Id.*  "The search was authorized by the warrant; the seizure was authorized by the 'plain-view' doctrine."  *Id.*

Like the warrant in *Horton*, which only authorized the officers to search for the proceeds of the robbery but not weapons, in this case, the wiretap warrant that issued only authorized law enforcement officers to intercept communications related to drug related offenses.  496 U.S. at 130-31.  However, just as the officers in *Horton*, discovered other

evidence (*i.e.*, weapons) outside the scope of the warrant, the officers in this case overheard conversations outside the scope of the targeted drug offenses in the wiretap warrant (*i.e.*, relating to kidnapping).  *See id.*   To this Court, the nontargeted communications are akin to the weapons found in plain view in *Horton*, which the Supreme Court held did not need to be excluded.  *Id.*  Just as the search in *Horton* was authorized by the warrant, while the seizure was authorized by the plain view doctrine, the search in this case—to the extent it was the wiretapping of Plaintiff's conversations rather than the search of his person—was authorized by SW-2013-185.  The seizure of his communications related to nontargeted offenses would be in "plain view" while the officers listened in on the lawful wiretap.  *Id.*  Further, the Ninth Circuit has held that "[a]lthough the conversations to be intercepted by electronic surveillance are necessarily identified partly in terms of the suspected offenses to which they will relate, the content of the communications to be intercepted cannot be known in advance, and the authorizing order need not describe every aspect of the criminal activity expected to be revealed by the surveillance."  *United States v. Licavoli*, 604 F.2d 613, 620 (9th Cir. 1979) ("It was not required in this case that the orders specify the conversations to be seized in the detailed and restrictive manner urged by Licavoli; the reference in the orders to stolen goods generally, rather than stolen diamonds, was sufficient to satisfy the mandates of the Fourth Amendment.").  Rather, "[t]he order must be broad enough to allow interception of any statements concerning a specified pattern of crime."  *Id.*  With that being said, the Court acknowledges that there was a procedure for using those nontargeted communications, and that procedure was not followed in this case.

The OCCSSA allows for wiretap authorizations.[10]  *See United States v. Rivera*, 527

---

[10]     "A 'wiretap order' is an order giving law enforcement authorities judicial approval to conduct a wiretap." *Whitaker v. Garcetti*, 291 F. Supp. 2d 1132, 1135-36, n.3 (C.D. Cal. 2003), *aff'd in part, vacated in part, rev'd in part,* 486 F.3d 572 (9th Cir. 2007). Essentially, it is the "equivalent of a search warrant but, due to its high potential for abuse, has more rigorous minimal standards than the typical search warrant." *Id.* (citing CAL. PENAL CODE § 629.50 (1999) (listing the numerous and detailed specifications to be included in an application for a wiretap order); see also CAL. PENAL CODE § 629.52 (1999)

F.3d 891, 897 (9th Cir. 2008).  "To obtain a wiretap, the government must overcome the statutory presumption against this intrusive investigative method by proving necessity." *Id.*  The OCCSSA also "authorizes the states to enact their own wiretap laws only if the provisions of those laws are at least as restrictive as the federal requirements for a wiretap set out in Title III." *People v. Jackson*, 129 Cal. App. 4th 129, 146 (2005), *as modified on denial of reh'g* (June 7, 2005).  The federal act "in effect, establishes minimum standards for the admissibility of evidence procured through electronic surveillance; state law cannot be less protective of privacy than the federal Act." *Id.* at 146-47.  California, in turn, has enacted its own wiretapping law, the PFEWA.  Several courts have held that the OCCSSA does not preempt the PFEWA. *Leong v. Carrier IQ Inc.*, No. cv-12-01562-GAF-MRWX, 2012 WL 1463313, at *3 (C.D. Cal. Apr. 27, 2012).

Plaintiff refers throughout his Complaint to the "invalid wiretap." *See* Compl. at 9, ¶¶ 27-28.  At the same time, both the law and his own complaint indicate the wiretap was not, in fact, invalid.  The Complaint clearly alleges the wiretap itself was lawfully conducted pursuant to a warrant. *See* Compl. at 6, ¶ 19 (alleging that between September 20, 2013 and October 3, 2013, Defendants "conducted a wiretap on the telephones of two individuals, Raphael Martinez and Jonathan Vizcaino pursuant to an order (SW-2013-185) allowing them to wiretap for the sole purpose of listening for drug-related activity"); *see also* Mot. at 6 10-11.  In other words, the act of intercepting communications, by Plaintiff's own allegations, was both authorized and lawful.[11]  However, because the wiretap only

_____

(listing the many findings that a court is required to make before it issues a wiretap order, including but not limited to a finding of various different forms of probable cause)).

[11]    The Complaint, when quoting from the Imperial County Superior Court's Order Vacating Plaintiff's Conviction, does not refer to the wiretap as invalid but notes the problem with the evidence used against Plaintiff: "During post-trial proceedings in co-defendant Martinez's case (EHC000180) the People discovered that judicial authorization was not obtained pursuant to Penal Code section 629.82(a) to allow use of evidence of crimes not specified in SW-2013-185" because "Penal Code section 182(a)(1)/209(a) was not specified in wiretap interception order SW-2013-185." Compl. at 8, ¶ 26(d) (citing the Order Vacating Plaintiff's Conviction). In other words, contrary to Plaintiff's allegations that the order invalidated the wiretap, it did not.

authorized Defendants to listen for drug related activity, and kidnapping was outside of that scope (*i.e.*, kidnapping was a nontargeted offense), in order to act on that information outside the scope of SW-2013-185, Defendants only needed to apply to a judge for authorization or approval.   18 U.S.C. § 2517(5); CAL. PENAL CODE § 629.82.   The government did not do this, and this is where the problem lies.  However, based on the allegations of the Complaint, the act of simply overhearing Plaintiff discuss the kidnapping during the wiretap was lawful.  *See* Compl. at 7, ¶ 19.

California Penal Code section 629.82(a) ("Section 629.82(a)"), which the Imperial County Superior Court referenced in its order, allows officers who intercept "communications relating to crimes other than those specified in the order of authorization, but are enumerated in subdivision (a) of Section 629.52 . . . or a violent felony as defined in subdivision (c) of Section 667.5," to use or disclose the contents of those communications or evidence derived from them by applying to a judge and showing "the contents were otherwise intercepted in accordance with the provisions of this chapter." *See also* 18 U.S.C. § 2517(5) (providing for a similar judicial authorization process for nontargeted communications under the OCCSSA).   In layman's terms, under Section 629.82(a), when law enforcement listens in on a lawful wiretap and hears communications relating to "non-targeted communications," but those communications relate to crimes described in, *inter alia*, California Penal Code sections 629.52 or 667.5, law enforcement can apply to a judge to use those communications or evidence derived from those communications by showing the communications were heard while listening in on a lawful wiretap.  *See also* CAL. PENAL CODE § 667.5(c)(14) (defining a "violent felony" to include kidnapping).

California Penal Code section 629.52, in turn, provides that "[u]pon application made under Section 629.50, the judge may enter an ex parte order … authorizing interception of wire … communications initially intercepted … if the judge" finds probable cause exists "to believe that an individual is committing, has committed, or is about to commit," *inter alia*, (1) a violation of Section 209" or (2) "[a]n attempt or conspiracy to

commit any of the above-mentioned crimes." California Penal Code section 209 prohibits kidnapping, providing that "[a]ny person who … kidnaps or carries away another person by any means whatsoever with intent to hold or detain … that person for ransom, reward or to commit extortion or to exact from another person any money or valuable thing, … is guilty of a felony." California Penal Code section 182(a)(1), in turn, provides that where "two or more persons conspire" together to commit any crime, they will be punished "in the same manner and to the same extent as is provided for the punishment of that felony."

Plaintiff was charged with and convicted of violating both California Penal Code section 182(a)(1) as well as section 209, Compl. at 8, ¶ 26(a), meaning that California Penal Code section 629.52 expressly authorized the judge who issued the wiretap to issue an order authorizing interception of those non-targeted offenses (*i.e.*, kidnapping and conspiracy to kidnap). Thus, the government could have lawfully used the evidence it intercepted regarding the "nontargeted communications" pertaining to the kidnapping against Plaintiff, especially because the crimes of which he was convicted were specifically enumerated as crimes warranting authorization, but it needed to get a judge's approval first. The government never did this.

Under the PFEWA, any person whose wire communications are intercepted in violation of its provision, may (1) file "a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use, the communications," and (2) recover (a) "[a]ctual damages but not less than liquidated damages computed at the rate of one hundred dollars ($100) a day for each day of violation or one thousand dollars ($1,000), whichever is greater," (b) punitive damages, and (c) "[r]easonable attorney's fees and other litigation costs reasonably incurred." CAL. PENAL CODE § 629.86. However, the PFEWA also allows for a good faith defense by providing that "[a] good faith reliance on a court order," such as the subsequent search warrant in this case, "is a complete defense to any civil or criminal action brought under this chapter … any other law." CAL. PENAL CODE § 629.86; *see also* 18 U.S.C. § 2520(d) (also providing a good faith defense when relying on a court warrant or order). Thus, Defendants might

1    have a defense to such a civil action to the extent that Plaintiff's arrest was done in reliance

2    on a search warrant.   However, the act of intercepting communications related to

3    nontargeted offenses in and of itself did not violate Plaintiff's Fourth Amendment rights.

4    More importantly, the wiretap order was valid and was in no way invalidated by the

5    Imperial County Superior Court's Order Vacating Plaintiff's Conviction.

6          The Court has concluded that Investigative Defendants lawfully intercepted the

7    nontargeted offenses obtained via listening in on a lawful wiretap obtained pursuant to SW

8    2013-185, and that a process exists to authorize use of those identified nontargeted offense

9    communications that was not followed here.   However, it must also conclude whether the

10   government's use of the information obtained on the wiretap pertaining to the nontargeted

11   offenses, to obtain a subsequent search warrant to search Plaintiff and his property violated

12   his constitutional rights where use of that information could have been authorized but was

13   not.   Next, the Court must address whether the arrest of Plaintiff, pursuant to a search

14   warrant based on probable cause violated his constitutional rights because the probable

15   cause supporting the warrant for his arrest was based on information outside the scope of

16   the warrant authorizing the wiretap.   Finally, the Court must conclude whether use of the

17   nontargeted offense communications at trial violated Plaintiff's constitutional rights.

18         b.    *Plaintiff's Complaint also does not plead any facts sufficient to*

19              *allow the Court to plausibly infer the invalidity of the second*
                *search warrant.*

20         Plaintiff argues that the Police Defendants (1) had no basis to stop the vehicle

21   Plaintiff was in; (2) should have known that the second search warrant was invalid (because

22   the District Attorney's office failed to obtain an order allowing use of intercepted

23   communications beyond the scope of the wiretap order); and (3) executed the search

24   warrant despite knowing it was invalid.   Oppo. at 5:14-17.   However, as noted, at least as

25   to the Police Defendants, Plaintiff does not allege that the Police Defendants were involved

26   in the wiretap; as a result, it is not plausible for him to allege that they had any reason to

27   know that the second search warrant—or even a search without a warrant based upon the

28   exigent circumstances of a suspected kidnapping—was invalid.   Reply at 6:17-23.   Thus,

Plaintiff's above arguments are rejected.  Those arguments are legal conclusions.  While a court is required to draw all reasonable inferences in favor of the plaintiff when the defendant moves to dismiss the complaint, it is not required to accept Plaintiff's position as to legal conclusions.  *See, e.g.*, *Parents for Priv. v. Barr*, 949 F.3d 1210, 1221 (9th Cir. 2020), *cert. denied,* No. 20-62, 2020 WL 7132263 (U.S. Dec. 7, 2020) (noting that courts "are not required to accept as true legal conclusions couched as factual allegations").

On the one hand, the Court acknowledges the problem with a warrant being secured based on information outside the scope of the wiretap warrant.  On the other hand, it is not clear to this Court that use of the information overheard while on a lawful wiretap would not fall within the analogous scenario of the plain view doctrine, creating probable cause to secure the second warrant at issue.  *See, e.g.*, *Horton*, 496 U.S. at 140, 142 (holding that where a police officer saw weapons while executing a valid search warrant to search for stolen property, "[t]he search was authorized by the warrant; the seizure [of the weapons] was authorized by the 'plain-view' doctrine"); *see also Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993) (applying the plain view doctrine to other senses by stating that it "has an obvious application by analogy to cases in which an officer discovers contraband through the sense of touch during an otherwise lawful search").  However, as outlined below, the Court concludes that use of the nontargeted offense communications to search Plaintiff and arrest him or as evidence against him at trial did not violate his Fourth Amendment rights.

        c.   *The use of the communications concerning nontargeted offenses at trial, although not authorized, was harmless error and also does not state a claim for a Fourth Amendment violation.*

As for whether using the nontargeted offenses at trial without judicial authorization violates Plaintiff's Fourth Amendment rights, the Court finds *People v. Roberts*, 184 Cal. App. 4th 1149, 1159 (2010) insightful.   In *Roberts*, the defendant, like Plaintiff here, contended that his conviction needed to be reversed because the evidence against him was obtained as a result of an illegal wiretap under the Presley-Felando-Eaves Wiretap Act of 1988, CAL. PENAL CODE § 629.50, *et seq.* and in violation of his Fourth Amendment rights. 184 Cal. App. 4th at 1159.  He also argued the court erred when it denied his motion to

suppress evidence obtained by the wiretaps. *Id.* The California Court of Appeal, however, concluded "that the wiretaps were obtained legally and minimized in accordance with the relevant statutes." *Id.* It found that "the court erred when it did not require the state to provide timely reports to the court under section 629.60 and to file an application to use nontargeted intercepted communications as soon as practicable as required by section 629.82, subdivision (a)(1)." *Id.* However, it determined the error was harmless, and as such, affirmed the judgment against the defendant. *Id.* at 1160.

Like this case, *Roberts* involved a lawful wiretap warrant issued based on a finding of probable cause that the defendant and his associates were committing or about to commit offenses related to drug trafficking. 184 Cal. App. 4th at 1169. Thus, the San Diego Superior Court judge issued an order authorizing interception of communications concerning such drug trafficking offenses. *Id.* In *Roberts*, however, the wiretap order later expanded its scope to include a finding of probable cause to believe the defendant and other Crips members were also participating in a criminal street gang. *Id.* at 1170. Later, a task force instructed officers to use any pretext to pull the defendant over, and one officer, after noticing dark tinted side windows, pulled the defendant and his companion over, informing them he stopped the car because of the tinted front side windows.[12] *Id.* at 1164. During the stop, the officer smelled alcohol and saw a plastic cup in the center console, which the passenger admitted contained alcohol. *Id.* at 1164-65. The officer asked the defendant and his passenger to step out of the vehicle, and after they did so, the officer found a loaded semiautomatic handgun under the front passenger seat. *Id.* at 1165. The officers arrested the defendant and his passenger. *Id.* Following their arrest, the police also executed search warrants on the homes of the defendant and his passenger, seizing a number of photographs evidencing their membership in the Crips gang. *Id.*

Almost eight months after the defendant was arrested, and as a result, the wiretap

---

[12]   California Vehicle Code section 26708.5(a) prohibits individuals from installing "any transparent material upon the . . . side windows . . . of any motor vehicle if the material alters the color or reduces the light transmittance."

expired—as wiretaps expire when the objective is accomplished, the prosecution filed an application to use nontargeted, statutorily-authorized communications as evidence at trial, pursuant to California Penal Code, sections 629.82(a)(2), 629.78. *Roberts*, 184 Cal. App. 4th at 1170. The application concerned eleven telephone calls intercepted before the court authorized the task force to intercept communications pertaining to criminal street gang activity. *Id.* Because the court denied the defendant's motion to suppress evidence obtained via the wiretaps, it did not rule on the prosecutor's application to use the nontargeted intercepted communications. *Id.* at 1171. Thus, at trial, the prosecution introduced evidence of all intercepted telephone conversations between the defendant, his passenger, and others in which they discussed a plan to shoot leaders of their rival gang, the Bloods. *Roberts*, 184 Cal. App. 4th 1170. The court also admitted the photographs and evidence obtained as a result of the vehicle stop, including the gun found under the defendant's seat. *Id.*

On appeal, the court determined that even though the officer had a subjective intent or ulterior motive for stopping the defendant's vehicle, which led to the discovery of evidence leading to the defendant's arrest, "[i]t is well settled in California officers can make arrests based on information and probable cause furnished by other officers." *Roberts*, 184 Cal. App. 4th at 1189-91 (citing *People v. Ramirez*, 59 Cal. App. 4th 1548, 1553 (1997) (*Ramirez*)). Thus, not only was "the officers' 'collective knowledge' of Roberts's involvement in the planned shooting … valid and reasonable," but there was also "substantial evidence to support the court's finding that Officer Norton's belief the vehicle's tinted windows violated Vehicle Code section 26708.5, subdivision (a), was sufficient to establish probable cause for the stop." *Id* at 1191. "Just as 'stopping defendant's vehicle for a seatbelt violation, even if done as a pretext for the narcotics investigation, was entirely legal,' so too was this stop." *Id.* Consequently, "the vehicle stop did not violate constitutional safeguards against unreasonable search and seizure." *Id.* Similarly, here, at least as to the Police Defendants, they searched Plaintiff's hotel room and vehicle based on probable cause from the Investigative Defendants that a kidnapping

1   was about to take place.  Thus, their search of Plaintiff's vehicle and hotel room, based on

2   probable cause furnished by other officers, was lawful.  *Roberts*, 184 Cal. App. 4th at 1191.

3        In ruling on the wiretap evidence, the *Roberts* court acknowledged that "before the

4   contents of any statutorily-authorized, nontargeted communications, and any evidence

5   derived from those communications, may be used in a criminal court proceeding, the state

6   must apply to a judge for authorization."  184 Cal. App. 4th at 1188 (citing CAL. PENAL

7   CODE §§ 629.78, 629.82(a)).  Even though the superior court did not rule on the application

8   to use the nontargeted communications, "[h]ad the trial court considered the application

9   under section 629.82, subdivision (a)(2), [it did] not believe the court would have denied

10  the prosecution the use of the nontargeted, statutorily-authorized communications at trial,"

11  even if the application was untimely.  *Id.*  The court noted that (1) "the evidence clearly

12  supports the conclusion the 11 calls 'were otherwise intercepted in accordance with the

13  provisions of this chapter,'" pursuant to California Penal Code, section 629.82; (2) "[t]he

14  11 calls related to criminal street gang activity and conspiracy to commit murder, which

15  are enumerated crimes under section 629.52, subdivision (a)"; and (3) "[t]he task force

16  legally intercepted both targeted and statutorily-authorized communications" as well as the

17  nontargeted communications.  *Id.* at 1188.  Thus, "[b]ecause the material was legally

18  intercepted, … the errors did not contravene the Fourth Amendment and, with respect to

19  the statutory violations, the purposes of the provision were achieved despite the errors."

20  *Id.* at 1188-89.  Moreover, because the officers intercepted the material in accordance with

21  California's wiretapping laws, and the defendants were not surprised by the proposed use

22  of the 11 calls at trial, any error in introducing the calls was harmless.  *Id.* at 1189.

23       Just like the information in *Roberts*, which exceeded the scope of the wiretap

24  warrant, but was nonetheless used to justify a search of the defendant's vehicle, leading to

25  a seizure of his person (arrest), the information in this case led police to seek a warrant to

26  search Plaintiff and his vehicle, which led to an arrest.  Here, one of the only wrongs

27  Plaintiff could allege is that the second search warrant was invalid because Defendants

28  obtained it by using "nontargeted communications" regarding a crime, similar to those in

-33-

*Roberts*, to search and arrest him.  Compl. at 9, ¶ 27; *see also* Mot. at 6:21-24.  This Court suspects that even absent a judicial authorization, as was the case in *Roberts* (albeit at least in that case, an application had been submitted, just not ruled on), the use of the communications would be viewed as harmless error given the California wiretapping laws expressly allow for their use.  As in *Roberts*, (1) the evidence supports the conclusion the calls were otherwise intercepted in accordance with the PFEWA; (2) the calls related to enumerated crimes under Section 629.52; and (3) the Investigative Defendants intercepted both targeted and nontargeted communications.  184 Cal. App. 4th at 1188.  Thus, using those communications to obtain the second search warrant as well as at trial did not constitute a violation of Plaintiff's constitutional rights.  *See, e.g.*, *Roberts*, 184 Cal. App. 4th at 1189-91 ("It is well settled in California officers can make arrests based on information and probable cause furnished by other officers.").

Thus, the use of the nontargeted offenses at trial was harmless error given the prosecution, like the prosecution in *Roberts* which also lacked judicial authorization to use nontargeted offenses at trial, could have easily secured judicial authorization and been able to use the offenses.

    d. *Even if a Plaintiff alleged sufficient facts giving rise to a Fourth Amendment violation, the Police Defendants would be protected by the Good Faith Exception.*

The exclusionary rule may exclude evidence that qualifies as "fruit of the poisonous tree," or in other words, derives from a violation of a defendant's constitutional rights. *Wong Sun v. United States*, 371 U.S. 471, 485 (1963); *see also Utah v. Strieff*, 136 S. Ct. 2056, 2059 (2016) ("To enforce the Fourth Amendment's prohibition against 'unreasonable searches and seizures,' this Court has at times required courts to exclude evidence obtained by unconstitutional police conduct.").  Although Plaintiff has not made the argument, the implication is that if he had known about the lack of judicial authorization, he would have moved to exclude the wiretap evidence submitted at trial

concerning the nontargeted offenses and may not have been convicted.[13]   However, if he had done so, the prosecution could have remedied the mistake by securing the judicial authorization, which would have allowed the evidence to be admitted.  Further, "[t]here are three exceptions to this exclusionary rule: (1) the independent source exception; (2) the inevitable discovery exception; and (3) the attenuated basis exception."[14]  *United States v.*

---

[13]   Plaintiff pleads that the District Attorney refused "to produce the wiretap orders and affidavits," which is why there was a delay in his "learning about the invalidity of the wiretap order."  Compl. at 9, ¶ 28.  The Imperial County Superior Court docket confirms that Plaintiff did not file a motion to suppress the wiretap evidence in the underlying criminal case.  To the extent that he failed to file such a motion to suppress, he may have waived any right to challenge the use of that evidence at trial, even in a civil action. *Compare Baskerville v. City of Harrisburg*, No. 1:19-CV-420, 2019 U.S. Dist. LEXIS 139995, at *12 (M.D. Pa. Aug. 16, 2019) (finding in a *pro se* screening of the plaintiff's Section 1983 claim, that "[a]s a practical matter, Baskerville's failure to timely file a motion to suppress raising this Fourth Amendment claim may constitute a waiver of that claim.") (citing *United States v. Rose*, 538 F.3d 175, 182 (3d Cir. 2008)) *with Linnen v. Armainis*, 991 F.2d 1102, 1105 (3d Cir. 1993) (noting that "no issues pertinent to his § 1983 action were 'actually litigated' in the state criminal case because Linnen did not pursue his suppression motion in that proceeding," meaning neither collateral estoppel or res judicata barred the claim).

[14]   The Ninth Circuit has made clear that "the Fourth Amendment's exclusionary rule (and its fruit of the poisonous tree doctrine) does not apply in the context of civil suits under § 1983." *Gammage v. City of San Francisco*, No. 18-CV-05604-JCS, 2020 WL 1904498, at *10 (N.D. Cal. Apr. 17, 2020) (citing *Lingo v. City of Salem*, 832 F.3d 953, 959-60 (9th Cir. 2016)); *see also Est. of Taylor v. Salt Lake City*, 16 F.4th 744, 753 (10th Cir. 2021) (same).

For example, in *McCullars v. Crayton*, the defendant in a Section 1983 case stopped the plaintiff for speeding, approached the vehicle, smelled marijuana, and in the course of issuing the speeding ticket, began questioning the passenger.  No. 16-cv-0962 SMV/GBW, 2017 U.S. Dist. LEXIS 117832, at *3, 15-16 (D.N.M. July 27, 2017).  After the plaintiff signed a consent to search form, the defendant found marijuana and a locked safe in the vehicle.  *Id.* at *4.  The defendant issued citations and released the plaintiff and her companion, but before doing so, he removed the safe from the vehicle.  *Id.*  Afterwards, the defendant sought and obtained a search warrant to open the safe.  *Id.*  Upon finding that the safe contained drugs and drug paraphernalia, the defendant filed a criminal complaint and an arrest warrant was issued.  *Id.* at *5.  The plaintiff then filed a motion to suppress the evidence of the search on the grounds that it had been nonconsensual, which was

1   *Davis*, 332 F.3d 1163, 1171 (9th Cir. 2003).  In this case, even if a Fourth Amendment

2   violation had occurred, the attenuated basis exception would also potentially apply to

3   prevent exclusion of the wiretap evidence concerning the nontargeted offenses, resulting

4   in the same outcome (*i.e.*, Plaintiff's conviction).

5        With respect to the attenuation exception, "[i]n some cases, for example, the link

6   between the unconstitutional conduct and the discovery of the evidence is too attenuated

7   to justify suppression." *Utah v. Strieff*, 136 S. Ct. 2056, 2059 (2016).  For example, "when

8   an officer makes an unconstitutional investigatory stop; learns during that stop that the

9   suspect is subject to a valid arrest warrant; and proceeds to arrest the suspect and seize

10   incriminating evidence during a search incident to that arrest," any "evidence the officer

11   seized as part of the search incident to arrest is admissible because the officer's discovery

12   of the arrest warrant attenuated the connection between the unlawful stop and the evidence

13   seized incident to arrest."  Under this exception, "at *some* point along the line, evidence

14   might be 'fruit,' yet nonetheless be admissible because it is no longer 'tainted' or

15   'poisonous.'"  *United States v. Smith*, 155 F.3d 1051, 1060 (9th Cir. 1998).  "Whether

16   derivative evidence is admitted or excluded 'will depend upon the precise role the illegal

17   seizure in fact played in the subsequent discovery.'"  *Id.* (quoting *United States v. Bacall*,

18   443 F.2d 1050, 1057 (9th Cir. 1971)).  However, "[e]vidence need not be suppressed

19   merely because it would not have come to light but for the illegal wiretap."  *United States*

20   _____

21   granted.  *Id.*  In ruling on the plaintiff's Section 1983 claims, the court held that "[b]ecause

22   the fruit of the poisonous tree doctrine does not apply in the § 1983 context, the information

23   obtained from the initial unconstitutional search and seizure [*i.e.*, the lockbox containing

24   the drug paraphernalia leading to her arrest] does not taint these subsequent lawful events

25   [*i.e.*, a search of the lockbox pursuant to a search warrant issued by a natural and detached

26   magistrate]."  *Id.* at *15-16.  Thus, "[t]he damages Plaintiff seeks—those relating to her

27   pretrial detention—arose from a second, lawful search and arrest," and the plaintiff could

28   not recover those damages.  Here, even though the exclusionary rule and good faith

    exception do not apply to a Section 1983 claim, they are relevant to the Court's analysis of

    whether a Fourth Amendment violation took place, creating a basis for the Section 1983

    claims.  As in *McCullars*, the second search pursuant to a valid search warrant and leading

    to Plaintiff's arrest would not taint any unlawful events.

*v. Cales*, 493 F.2d 1215, 1215 (9th Cir. 1974).  If evidence resulting from an ***illegal*** wiretap is admissible, it would appear evidence resulting from a ***legal*** wiretap, like the legal wiretap in this case, would be admissible.  *See id.*

    At best, Plaintiff appears to argue the search warrant for Plaintiff's vehicle and hotel room represented a "tainted warrant," or a warrant "where the information giving rise to probable cause was obtained in violation of the defendant's constitutional rights."  Kit Kinports, *Illegal Predicate Searches and Tainted Warrants After Heien and Strieff*, 92 Tul. L. Rev. 837, 838 (2018).  However, "the information giving rise to the probable cause" (*i.e.*, Plaintiff's statements concerning the kidnapping) was not obtained in violation of his constitutional rights; rather, they were obtained during a lawful wiretap.  Thus, although procedure was not followed, no constitutional violation occurred causing a tainted warrant. Moreover, applying *Leon*, the search of Plaintiff along with his subsequent arrest were lawful if (1) a warrant was secured in this case; (2) the magistrate did not know that the information contained within the warrant was fruit of a poisonous tree, and Plaintiff has provided no information to suggest the judge who issued the second search warrant knew judicial authorization to use the nontargeted offense communications had not been obtained; and (3) the officers executing the warrant operated under a good faith belief probable cause existed.  The officers appear to have been operating in good faith given Plaintiff alleges neither that the Police Defendants were involved in the wiretap nor that they had any reason to know the scope of the wiretap had been exceeded.  *See Tercero v. State*, 963 So. 2d 878, 884 (Fla. Dist. Ct. App. 2007) (denying the defendant's motion to suppress while noting that "[e]xecution of the arrest warrant was an intervening circumstance that was sufficiently distinguishable from the prior police misconduct so as to dissipate the taint of that 'primary illegality.'").

    The Supreme Court has expressly held that the Fourth Amendment exclusionary does not "bar the use in the prosecution's case in chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause."  *United States v.*

*Leon*, 468 U.S. 897, 900-01, 923-24 (1984); *see also* Kinports, *supra*, 92 Tul. L. Rev. at 838 (noting "the good-faith exception to the exclusionary rule allows prosecutors to introduce evidence obtained illegally pursuant to a search warrant that should never have been issued because it was not supported by probable cause," but it is unclear whether the good faith exception insulates evidence uncovered by a tainted warrant from the exclusionary rule).  The PFEWA also allows for a good faith defense by providing that "[a] good faith reliance on a court order is a complete defense to any civil or criminal action brought under this chapter . . . any other law."  CAL. PENAL CODE § 629.86; *see also* 18 U.S.C. § 2520(d) (also providing a good faith defense when relying on a court warrant or order).  This means that even if the government violates the federal or state wiretapping laws by using information outside the scope of the wiretap warrant to obtain a subsequent warrant, as was the case here, the government's good faith reliance on that lawfully obtained warrant will not necessitate the exclusion of the evidence at issue.  To the extent Plaintiff's issue is the introduction of the wiretap evidence at his trial, it appears that the facts in his Complaint fail to show any basis existed for excluding the wiretap evidence given the Court's conclusion that failure to obtain judicial authorization is harmless error that does not amount to a Fourth Amendment violation. *Roberts*, 184 Cal. App. 4th at 1188.

In sum, normally, the reasonableness of a search or seizures ordinarily represents a question of fact appropriate for determination by a jury.  *See Howell v. Polk*, 532 F.3d 1025, 1026 (9th Cir. 2008); *see also Hydrick v. Hunter*, 500 F.3d 978, 993 (9th Cir. 2007) *cert. granted*, *judgment vacated on other grounds*, 556 U.S. 1256 (2009), 669 F.3d 937 (9th Cir. 2012) ("[t]he 'reasonableness' of a search or seizure is a fact-intensive inquiry that cannot be determined at this stage").  In this case, however, the Court finds that the parties do not dispute the facts, and those facts demonstrate no violation of constitutional rights took place here as a matter of law.[15]

---

[15]    If Plaintiff had alleged that the search warrant for the search of his hotel and vehicle had been obtained by judicial deception, that might state a claim for a constitutional

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### C.   Plaintiff Has Failed to Plead Any Facts to Support a Claim Against the City Under *Monell*

Defendant argues that (1) Plaintiff's Complaint is devoid of any allegations to establish *Monell* liability; (2) Plaintiff's allegations "against Guthrie and Macias in their official capacity are really claims against the City of Fontana and are duplicative," and (3) "[w]hen analyzing the allegations made in the Complaint, there are no allegations alleging that the alleged constitutional harms were the result of a City of Fontana policy, practice, or custom." Mot. at 15:25-16:4 (citing Compl. at 9-10, ¶¶ 29-33). Plaintiff "acknowledges that the Complaint is a little sparse on facts establishing the Monell claim." Oppo. at 5:21-22. He asks that "should the Court determine that the Complaint is insufficient, [he] can amend the Complaint to allege sufficient facts." *Id.* at 5:22-24. Police Defendants reply that "Plaintiff fails to present any challenge to Defendants' argument that dismissal of the *Monell* claim against the City is warranted." Reply at 7:15-16. Thus, they argue that Plaintiff has abandoned this claim, so the Court should dismiss it. *Id.* at 7:18-23.

In *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court held a municipality or local government may be held liable for constitutional violations under Section 1983. "*Monell* is clear, however, that 'a municipality cannot be held liable under § 1983 *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.'" *Scalia v. Cty. of Kern*, 308

---

violation under the Fourth Amendment. *See, e.g.*, *Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1152 (9th Cir. 2021) ("A seizure conducted pursuant to a warrant obtained by judicial deception violates the Fourth Amendment.") (quoting *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007)). However, Plaintiff alleges neither that the search warrant was not issued by a neutral and detached magistrate nor that whatever entities applied for the warrant deceived the magistrate into issuing the warrant. Further, so long as Police Defendants merely executed the warrant but did not apply for it, then, even if Investigative Defendants committed acts of judicial deception, Plaintiff would still fail to state a claim for relief against Police Defendants who merely executed a search warrant issued by a magistrate judge after having no involvement in the wiretap. *See also State v. Mullens*, 221 W. Va. 70, 73-74, 79 (2007) (affirming the circuit court's finding that the Fourth Amendment was not "violated by the failure of the police to obtain judicial authorization to have an informant enter his home wearing an audio and video recording device").

F. Supp. 3d 1064, 1077-79 (E.D. Cal. 2018) (citing *Monell*, 436 U.S. at 691).  "Instead, a municipality can only be held liable for injuries caused by the execution of its policy or custom or by those whose edicts or acts may fairly be said to represent official policy." *Scalia*, 308 F. Supp. 3d at 1078 (citing *Monell*, 436 U.S. at 694).

A plaintiff seeking to hold a municipality liable must show: (1) the plaintiff was deprived of a constitutional right; (2) the defendant-municipality had a policy or custom; (3) the defendant's policy or custom amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation.  *Mabe v. San Bernardino Cty.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001); *see also Estate of Wilson by & through Jackson v. Cty. of San Diego*, No. 20-CV-457-BAS-DEB, 2020 WL 3893046, at *5 (S.D. Cal. July 10, 2020) (quoting *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006)).  A "policy" is a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir. 2008).

In *Herd v. County of San Francisco*, 311 F. Supp. 3d 1157, 1167 (C.D. Cal. 2018), the court dismissed the child's *Monell* claim finding that "[a]fter *Iqbal*, '[a]llegations of *Monell* liability will be sufficient for purposes of Rule 12(b)(6) where they: (1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference, i.e. show how the deficiency involved was obvious and the constitutional injury was likely to occur.'" *Id.* (citing, *inter alia*, *Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1163 (E.D. Cal. 2009)).  Because the *Herd* plaintiff "ha[d] not identified any such policy or custom," he "also ha[d] not explained how the policy or custom is deficient, . . .  caused him harm, and . . . amounted to deliberate indifference." *Id.*  Thus, the court dismissed the plaintiffs' claim for municipal liability.  *Id.* at 1168.

Here, the Court finds Plaintiff's claims do not plausibly plead the requirements for a *Monell* claim.  Plaintiff conclusorily alleges that his Fourth Amendment rights were

violated, and that various defendants "acted under color of his authority as such, and under color of the statutes, regulations, customs, and usages of the United States of America, the State of California, and the County of Imperial." Compl. at 3-6, ¶¶ 4-14. While he does not have a separate claim for relief for his *Monell* claim, he alleges within his first claim for violation of Section 1983 that "[b]y engaging in the acts and having the policies and procedures described above, Defendants ... deprived [Plaintiff] of his rights against unlawful searches and seizures and against the deprivation of life, liberty, and property." Compl. at 9, ¶ 30. That is the extent of his allegations regarding the municipal defendants having any policy or custom. He does not explain what custom or policy violated his constitutional rights. Moreover, there are no allegations (much less facts to support them) that a specific policy or custom maintained by Defendants (1) amounted to deliberate indifference to Plaintiff's constitutional rights and/or (2) was the moving forced behind the constitutional violation. *See Mabe*, 237 F.3d at 1110-11.

Thus, like the deficient claim in *Herd*, Plaintiff's claim fails to (1) identify the policy/custom; (2) explain how that specific policy/custom is deficient; (3) explain how that deficient policy/custom caused Plaintiff harm; and/or (4) "reflect how the policy/custom amounted to deliberate indifference, *i.e.* show how the deficiency involved was obvious and the constitutional injury was likely to occur.'" *Herd*, 311 F. Supp. 3d at 1167; *see also Bryan*, 297 F. Supp. 3d at 1120 (noting that the plaintiff's allegations that do "nothing more than allege, in very general terms, that the City had a policy of permitting constitutional violations and abuses, and that it knew Rudinger was dishonest and corrupt" did "not meet the pleading standard"). More importantly, there can be no *Monell* claim where there is no violation of constitutional rights by any individuals employed by the city. *See Forrester v. City of San Diego*, 25 F.3d 804, 808 (9th Cir. 1994).

Finally, the Court also notes that to the extent Plaintiff's claims arise from the execution of the wiretap warrant, Defendants are likely immune from liability. *See* CAL. GOV'T. CODE §§ 815.2, 820.4. First, in addition to the Court concluding the officers did not violate Plaintiff's constitutional rights, the officers are also immune from liability for

actions taken while executing a search warrant.  *See, e.g.*, *County of Los Angeles v. Sup.* Ct., 181 Cal. App. 4th 218, 228 (2009) (officers immune from tort claims arising from execution of warrant).  Further, even to the extent any wrongfulness stems from statements made to secure the second warrant to search Plaintiff's vehicle and home, the officers cannot be held liable for those statements either.  *Hansen v. Calif. Dept. of Corr. & Rehabilitation*, 171 Cal. App. 4th 1537, 1547 (2008) (public employees acting within the scope of their employment for were immune from tort liability in connection with statements made to secure a warrant).  Finally, if the officers themselves cannot be held liable, neither can the City Defendants.  *See, e.g.*, *Bryan*, 297 F. Supp. 3d at 1122 (noting that to the extent the plaintiff's Section 1983 claims arise from the search at issue, the city, as the employer of the officers executing the warrant, was immune from liability).  Thus, the Court **GRANTS** the Motion to Dismiss the claims against the City of Fontana.

### D.   <u>Leave to Amend</u>

Plaintiff asks the Court to grant him leave to amend if it finds his allegations insufficient so he can "provide any additional facts necessary to make the complaint compliant with the rules of pleading."  Oppo. at 6:3-5.

Courts have broad discretion to grant leave to amend a complaint.  *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 420 (9th Cir. 2020).  This discretion includes the right to deny leave to amend where amendment may prove to be an effort in futility.  *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).  In determining whether a plaintiff should be granted leave to amend, courts consider "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore*, 885 F.2d at 538.   "[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad." *Nguyen*, 962 F.3d at 420 (holding that the district court did not err by denying leave to amend "because it was clear that the plaintiff had made her best case and had been found

wanting") (internal quotations omitted).  For example, in *Parents for Privacy v. Barr*, 949 F.3d 1210, 1239 (9th Cir. 2020), the Ninth Circuit affirmed the district court's denial of leave to amend because "[f]urther amendment would simply be a futile exercise."  In doing so, the Court noted that "[t]he problem with Plaintiffs' complaint, however, is not the sufficiency of their factual allegations" but "[r]ather, as we have explained above, Plaintiffs' legal theories fail." *Id.*  There, "[a]mending the complaint will not change, for example, the extent of the rights that are protected by the Fourteenth Amendment's Due Process Clause." *Id.*  Plaintiffs' allegations suffer from the same deficiencies.

Similar to *Barr*, Plaintiff has failed to state a plausible claim for relief.  Further, Plaintiff fails to state how or why leave to amend would cure the inadequacies pointed out by Defendants.  Most importantly, no facts can cure the fact that "amending the complaint will not change … the extent of the rights protected." *Barr*, 949 F.3d at 1239.  Thus, further amendment would prove futile. *Id.*  Accordingly, the Court exercises its broad discretion to deny leave to amend. *Nguyen*, 962 F.3d at 420.

## V.   **CONCLUSION**

For the above reasons, the Court **ORDERS** as follows:

1.    All allegations against individual defendants in their official capacity are dismissed given Plaintiff has already sued the County of Imperial, making such allegations duplicative.

2.    All Doe Defendants are dismissed for want of prosecution pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

3.    The Police Defendants' Motion to Dismiss the Complaint is **GRANTED** *with prejudice*.

**IT IS SO ORDERED.**

DATED:    January 7, 2022

_____
**HON. ROGER T. BENITEZ**
United States District Judge

-43-